## Case No. 12,784.

In re SHIELDS.

[4 Dill. 588; [1] 15 N. B. R. 532; 4 Cent. Law J. 557; 24 Pittsb. Leg. J. 190.]

Circuit Court, D. Iowa. May Term, 1877.

BANKRUPTCY — ATTACHMENT — COMPOSITION PROCEEDINGS.

Where an involuntary petition in bankruptcy is filed against an alleged bankrupt, and, prior

[1] [Reported by Hon. John. F Dillon. Circuit Judge. and here reprinted by permission.]

to an adjudication thereon, composition proceedings are instituted and a composition had with the creditors of such alleged bankrupt. *held*. that such composition will not dissolve an attachment issued and levied within four months from the date of filing such petition. as against a creditor who took no part in such composition proceedings.

[Cited in Sage v. Heller. 124 Mass. 214; Shaw v. Vaughan, 52 Mich. 409, 18 N. W. 126.]

September 14, 1875. Armill brought an action in the district court of Iowa, in Scott county, against Shields, by attachment, and upon the same day levied upon certain personal property of Shields. Immediately thereafter, certain creditors of Shields filed an involuntary petition in bankruptcy against him, and, upon the same day, Shields applied for a composition meeting, under the provisions of section 17 of the act of congress, entitled "An act to amend and supplement an act entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' approved March 2, 1867 [14 Stat. 524], and for other purposes." approved June 22, 1874 [18 Stat. 178]. A meeting was called, under the direction of the court, for that purpose. On the 20th day of October, and prior to the convening of said composition meeting, Armill obtained judgment in the state court against Shields, and a special execution was authorized to be issued against the property attached. After the rendition of the judgment aforesaid, said meeting of creditors was held, at which said Shields proposed a composition with his creditors, which was duly accepted and confirmed by the requisite number of creditors. and, upon hearing before the court, approved and ordered recorded as provided by law. Shields was not adjudged a bankrupt, nor was any assignee appointed, nor any assignment made of his estate. Armill had notice of all proceedings in the court of bankruptcy, but took no part therein. Armill refused to accept payment under the terms of the composition, but threatened to issue execution upon his judgment and sell the attached property; and thereupon Shields filed this bill in the court of bankruptcy. asking that Armill be enjoined from proceeding under his judgment.

Brown & Campbell, for Shields.
Stewart & White, for Armill.

LOVE, District Judge. The precise question in this case is, whether or not a composition under the bankrupt law, without an adjudication and assignment, operates to displace or dissolve an attachment in a state court, levied within four months of the proceedings in bankruptcy.

There is nothing in the amendment of the bankrupt law providing for compositions, that in express terms affects attachments in the state courts. The original act, which is still in force, provides that the "assignment shall relate back to the proceedings in bankruptcy; and thereupon, by operation of law,

the title to all the bankrupt's property and estate, both real and personal, shall vest in said assignee, although the same shall then be attached on mesne process as the property of the debtor, and shall dissolve any such attachment within four months next preceding the commencement of said proceedings."

There is no doubt that the attachment in this case would have been dissolved, if the composition had been consummated after an adjudication and assignment; not, however, by virtue of the composition, but in consequence of the adjudication and assignment. There was, in fact, no adjudication and assignment. It cannot be claimed, therefore, that the attachment was displaced by the very terms of the law: but the complainant insists that the composition operated to produce the same result. The argument of the complainant, and of the cases which he cites, is that the composition extinguishes the debt, and that no attachment lien can continue after the debt is discharged. This argument, manifestly, proves too much; for by the same reasoning all other liens, as well as attachment liens, would be destroyed by the composition. The composition, like a regular discharge, releases the debtor from the personal obligation to pay his debts; but neither the one nor the other affects the creditor's rights in rem. or his security by valid and subsisting liens. On the contrary, the bankrupt law in express terms preserves to the creditor all valid liens upon property, and to that extent undoubtedly keeps his debt alive. To this, the solitary exception is the case of attachments levied within four months of the commencement of the proceedings in bankruptcy, and this not by implication or inference. but by the express terms of the law.

Now. in my judgment. the composition clause of the law should receive a strict construction, because it is in plain derogation of common right. It compels the dissenting minority of creditors to accept just as much upon their claims as the debtor and the requisite majority see fit to resolve that all shall accept. It takes from the minority the common right of making their own terms with their debtor, and releases the obligation of the latter to them against their will, and upon terms imposed by the majority. Certainly, therefore, the provisions of this clause should not be extended by construction to embrace more than the words clearly and manifestly import.

Let us consider the matter from another point of view. The debtor and the required majority of creditors. without waiting for any adjudication, and before it is judicially determined that the debtor is insolvent, enter into an agreement of composition by which it is stipulated that the debtor shall pay a certain per cent upon his indebtedness to those who dissent as well as to the assenting creditors, and the bankrupt law annexes a certain legal consequence to this agreement. The law provides that, by virtue of this com-

position, the debtor shall be discharged from all personal obligation to pay his debts, beyond the stipulated sum. This clause of the law makes no provision whatever as to the displacement of liens,· whether by attachment or otherwise. The basis of this adjustment is covenant. All the creditors are parties to it—the majority by their own voluntary assent, and the minority by operation of law.

But it is contended that it is to be treated as precisely equivalent to a proceeding in which the debtor is regularly adjudged to be insolvent and required to surrender all his property to his creditors, and in which the court further decides that the debtor is by misfortune and without fraud a bankrupt, and therefore entitled to a full discharge from personal liability to his creditors. As in the latter case certain attachments are by the express terms of law dissolved. so in the former, attachments in the same category are to be considered displaced without any express provision whatever to the same effect. This position does not seem to me to be logical. I should say, rather, that attachments within the four months are dissolved by the assignment, because the law provides that they shall be; and attachments in the same predicament are not displaced by a composition, because the law does not provide that they shall be so affected.

Again, have creditors with attachment liens with the four months a right to participate in the composition meeting? Judge Treat, in Re Scott [Case No. 12,519], held, upon what seems to me very solid grounds, that attaching creditors have no right to participate in and vote at the composition meeting. If so, it seems clear that such creditors should not be in any wise affected by the results arrived at by the parties to the composition. This question has been variously decided by the supreme courts of Iowa and Maryland on the one side. and Judges Treat and Lowell on the other.

It seems to me that the Iowa case is not at all conclusive upon this point, because the court expressed themselves as content to follow the decision of the supreme court of Maryland. "without entering upon examination· and determination of the question." See Smith v. Engle. 44 Iowa, 265.

Turning to the case of Miller v. McKensie 43 Md. 404. and others decided by the supreme court of Maryland, one cannot but be struck with the unsatisfactory character of reasoning of the court in support of its decision. The court takes no notice whatever of the manifest distinction between the attaching creditor's claim in rem and in personam. but insists upon the proposition that the composition extinguishes the debt, and therefore discharges the attachment. With equal justice might the court say that the final discharge. which releases the bankrupt debtor from personal liability. necessarily discharges all liens upon property by attachment or otherwise. because there can be no

lien where the debt is extinguished—a proposition true enough as a general principle, but utterly fallacious when applied ·to the subject of liens, as recognized by the bankrupt law.

Perhaps the true answer to the argument of the Maryland court is, that the discharge or composition in bankruptcy affects rather the remedy than the debt itself. It is a defence that must be set up specially in bar of the remedy, like the statute of limitations; and it is, perhaps, not accurate to say that the discharge or composition extinguishes the debt. It seems to me that the reasonings of Judges Lowell and Treat touching this question are solid and conclusive; and, without the least disparagement to the state supreme courts. I consider those learned judges the safer guides, because, while the attention of the state courts to the bankrupt law is casual and infrequent, that enactment has necessarily been to the judges referred to a subject of constant reflection and profound study.

Bill dismissed with costs. Decree accordingly.